Wigberto **FUENTES ORTIZ**, Plaintiff,

v.

**MENNONITE GENERAL HOSPITAL,**
et al., Defendants.

No. CIV.A. 99–1536(PG).

United States District Court,
D. Puerto Rico.

July 21, 2000.

---

Co., John Doe 99CV1536, XYZ Insurance Co., defendants.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this Court is Co–Defendants Hospital General Menonita, Inc. and American International Insurance Co.'s ("Defendants") Motion for Summary Judgment. (Dkt.16) Plaintiff Wigberto Fuentes Ortiz ("Fuentes") opposed the motion. (Dkt.18) Because genuine issues of material fact persist, the Court DENIES Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, the trial court must go beyond the facade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). *See also Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999), *reh'g denied by* 171 F.3d 710 (1st Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

Gustavo A. Martinez–Tristani, San Juan, PR, for Wigberto Fuentes–Ortiz, plaintiffs.

Angel R. De–Corral–Julia, De Corral & De Mier, San Juan, PR, for Mennonite General Hospital, Inc., ABC Insurance

## FACTS

On May 21, 1998, Fuentes, a 33-year old male with a history of hemophilia[1], fell off a five foot ladder while at work injuring his left hand and arm. A co-worker brought Fuentes to the emergency room ("ER") of the Hospital General Menonita ("HGM"). According to the records, Fuentes arrived at the ER at 12:56 p.m. Shortly after his arrival, HGM was made aware that Fuentes had a history of hemophilia.

HGM initially made the diagnosis that Fuentes was suffering from left hand trauma. X-rays were taken of the left elbow, an IV was started, and Fuentes was given several medications (including Demerol, Valium, and Romazicon). A posterior splint was applied to Fuentes left arm by an orthopedic technician. HGM then sent Fuentes home with the instruction to return the next day to see an orthopedist.

Fuentes spent the night of May 21 to May 22 at home, where he continued to suffer severe pain and discomfort. Early the next morning, Fuentes returned to the ER at HGM complaining of pain in his left arm. Fuentes underwent a left forearm compartment pressure monitoring, a fasciotomy of the left forearm, brachial artery exploration, as well as other procedures, all performed or supervised by Dr. José Collazo Bonilla.

Fuentes alleges that as a result of negligence, medical malpractice, the failure to conduct an adequate medical screening and/or the failure to stabilize Plaintiff, Fuentes suffered permanent damage and impairment in his left arm, causing him constant pain, mental anguish, depression, anxiety, and fear. As a result of the injury, Fuentes can no longer work as a construction worker.

## DISCUSSION

### A. MEDICAL SCREENING EXAMINATION

EMTALA does not create a federal malpractice cause of action. *See Lopez–Soto v. Hawayek,* 175 F.3d 170, 177 (1st Cir.1999); *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1192 (1st Cir. 1995), *cert. denied,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996). EMTALA does not provide a federal remedy for misdiagnosis or medical negligence. What EMTALA does require is that Fuentes receive an "adequate medical screening examination." "Section 1395dd(a) contains mandatory language. Under the statute, the hospital must provide for medical screening if a request is made." *Stevison v. Enid Health Sys.,* 920 F.2d 710, 713 (10th Cir.1990). "Section 1395dd(a) imposes a '[m]edical screening requirement' upon hospitals with emergency departments: '[I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department.' 42 U.S.C. § 1395dd(a)." *Roberts v. Galen of Va., Inc.,* 525 U.S. 249, 250, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999).

---

1. More than 15,000 people in the U.S. have hemophilia (either hemophilia A or hemophilia B). A person with hemophilia has a missing or low supply of one of the factors needed for normal blood clotting. Depending on the level of these factors in the blood, hemophilia may be mild, moderate, or severe. About 60% of persons with hemophilia are of the severe type. They are at risk for bleeding after dental work, surgery, and trauma. They also may suffer internal bleeding with no trauma or injury and without apparent cause. Repeated joint bleeds can lead to other health problems and disabilities, including chronic joint problems and loss of range of motion. About 15% of persons with hemophilia have moderate hemophilia. These people are at risk for bleeding after surgery or trauma, joint problems, and, rarely, spontaneous bleeds. Twenty-five percent of people with hemophilia have mild hemophilia. Their disease may be so mild that it may go undetected until bleeding occurs after trauma or surgery. (Taken off the web site of the National Hemophilia Foundation, <<http://www.infonhf.org/>>).

■ "[F]aulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." *Correa,* 69 F.3d at 1192–93 (citation omitted). However, "the same screening examination must be made available to all similarly situated patients.." *Id.* at 1193.

To recover for disparate treatment, appellants must proffer evidence sufficient to support a finding that [Plaintiff] received materially different screening than that provided to others in his condition. It is not enough to proffer expert testimony as to what treatment should have been provided to a patient in [Plainitff's] condition.

. . .

A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints .... The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly. *Correa,* 69 F.3d at 1192 (emphasis added) (internal citations omitted).

*Reynolds v. MaineGeneral Health,* 218 F.3d 78, 83 (1st Cir.2000).

■ This case demonstrates the fine line between improper treatment and inadequate medical screening examination. While improper treatment is not covered by EMTALA, inadequate screening is. Fuentes arrived at the ER of HGM after suffering trauma to his left hand and arm. Upon his arrival, Fuentes informed the staff that he was a hemophiliac. Defendants did screen Fuentes, the only question is if this screening was adequate and consistent with other similarly situated patients.

■ On this narrow question, The Court cannot say that Defendants did provide an adequate screening examination. While, generally "it is the plaintiff's burden to show that the Hospital treated her differently from other patients ... [and] a hospital is not required to show that it had a uniform screening procedure[,] *Williams v. Birkeness,* 34 F.3d [695,] at 697 [(8th Cir.1994)]," *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 323–24 (5th Cir.1998), Defendants failed to answer essential interrogatories that touch on this issue. In this case, Fuentes has continuously requested information which Defendants have not provided. When Defendants control the information, in essence controlling the keys to the dismissal, the dismissal should not be granted. The following are several questions and accompanying deficient answers:

Q: 11. State whether on May 21st, 1998 you had established any policies or procedures for screening patients coming to your emergency room who display or complain of symptoms such as the ones described by plaintiff in his complaint. If so please state the date when such policies or procedures were established.

A: 11. Yes. Patient is first screened in Triage (see Triage policy enclosed). Relative to the specific condition of the patient, no protocol exists, other than the applicable standard of care.

Q: 12. Describe, step by step, the medical screening procedures you follow in your emergency room for patients who display or complain of symptoms such as the ones described by Plaintiff in his complaint.

A: 12. Please refer to # 11 above.

Q: 27. State in detail the effects of the treatment you provided to Plaintiff on May 21st, 1998.

A: 27. This information will be provided by our medical experts once they are contracted and render their reports.

Q: 28. State whether you stabilized Plaintiff after you provided the treat-

ment you described in response to interrogatory number 25 [ (regarding the treatment offered Plaintiff) ]. If you believe so, please state your basis for your belief.

A: 28. This information will be provided by our medical experts once they are contracted and render their reports. [ (Answer to # 25 refers Plaintiff to illegible Medical Report) ].

Obviously, several questions remain unanswered, including what the applicable standard of care is, what the procedures and policies are for patients that come to the ER with trauma and a history of hemophilia, the effect of the treatment on Plaintiff, whether Plaintiff was stabilized, and what the medical report actually says. It may very well be that Fuentes has nothing but a run of the mill negligence or malpractice case, but he is entitled to find that out.

■ "The question is not whether a plaintiff has insurance, or whether he was refused screening because of lack of insurance, but, rather, whether he was afforded an 'appropriate' medical screening examination." *Summers v. Baptist Med. Ctr. Arkadelphia,* 91 F.3d 1132, 1137 (8th Cir. 1996) (en banc). "An inappropriate screening examination is one that has a disparate impact on the plaintiff. Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities." *Id.* at 1138. "[T]he statute's requirement is hospital-specific, varying with the specific circumstances of each provider. We believe that a hospital defines which procedures are within its capabilities when it establishes a standard screening policy for patients entering the emergency room. Indeed, hospitals, and not reviewing courts, are in the best position to assess their own capabilities. Thus, a hospital violates section 1395dd(a) when it does not follow its own standard procedures." *Repp v. Ana-*

*darko Munic. Hosp.,* 43 F.3d 519, 522 (10th Cir.1994). HGM now needs to disclose its procedures and its "applicable standard of care."

## B. STABILIZATION

■ EMTALA also requires a hospital to stabilize a patient that has an emergency medical condition. *See* 42 U.S.C. § 1395dd(c). Thus, "if 'any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition,' the hospital must try to stabilize that condition, and can shift the patient to another institution only in accordance with EMTALA's transfer provisions. 42 U.S.C. § 1395dd(b). This language unambiguously imposes certain duties on covered hospitals vis-a-vis any victim of a detected medical emergency." *Lopez–Soto v. Hawayek,* 175 F.3d at 173.

■ However, "only if th[e] screening uncovers an emergency medical condition must the hospital stabilize the patient and refrain from transferring him except in compliance with the statutory commands, *see* 42 U.S.C. § 1395dd(b)-(c)." *Lopez–Soto v. Hawayek,* 175 F.3d at 172. If no emergency condition is detected, there is no duty to stabilize. Here, Defendants seemed to have accepted that Fuentes had an emergency (trauma combined with hemophilia)[2]. Defendants therefore had to stabilize Fuentes before sending him home. A hospital's duty is "to provide such medical treatment of the condition as may be necessary to assure, within a reasonable medical probability, that no material deterioration of the condition is likely to result from or occur." 42 U.S.C. § 1395dd(e)(3)(A). The duty to stabilize is therefore greater than the duty to screen. *See Matter of Baby K,* 16 F.3d 590, 595–96 (4th Cir.1994), *cert. denied,* 513 U.S. 825, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994). Here, Defendants introduced no

---

**2.** Regardless, the Court views the facts in the light most favorable to Fuentes and therefore as suffering from an emergency condition while at the ER.

evidence that this they stabilized Fuentes prior to discharging him.

## CONCLUSION

Wherefore, Defendants Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**