Nivia **FRATICELLI–TORRES,** et al., Plaintiffs

v.

CDT Dr. Arnaldo **GARCIA RIVERA,** et al., Defendants

v.

Dr. Luis **Martinez,** et al., Third–Party Defendants.

**Civil No. 04–1639 (FAB).**

United States District Court, D. Puerto Rico.

Aug. 13, 2007.

Pedro F. Soler–Muniz, Pedro F. Soler Muniz Law Office, Guaynabo, PR, Jose R. Ortiz–Velez, Ortiz Velez Law Office, San Juan, PR, for Plaintiffs.

Raphael Pena–Ramon, Raphael Pena–Ramon & Co., Roberto E. Ruiz–Comas, Gonzalez Villamil Law Office, Jose A. Miranda–Daleccio, Miranda Cardenas & Cordova, Juan M. Masini–Soler, Juan Masini Soler Law Office, San Juan, PR, Eugene F. Hestres–Rodriguez, Bird, Bird & Hestres, Old San Juan, PR, For Defendants.

Nuyen Marrero–Bonilla, Montijo & Montijo Law Office, San Juan, PR, for Third–Party Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On September 14, 2005, plaintiffs Nivia Fraticelli–Torres, on her behalf, as a member of the conjugal partnership constituted between her and Guillermo Bonilla–Colon ("Bonilla–Colon"), and on behalf of her daughter, and Michelle Bonilla, a minor, as heir and successor of Bonilla–Colon (collectively "plaintiffs"), filed a second amended complaint against CDT Dr. Arnaldo Garcia Rivera,[1] Hospital Hermanos Melendez, Inc., and several doctors and their insurers under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, as well as supplemental state law claims (Docket No. 59). On October 2, 2006, defendants Hospital Hermanos Melendez, Inc. ("HHMI") and American International Insurance Company

---

1. The Court dismissed the claims against CDT Dr. Arnaldo Garcia Rivera on January 17, 2006 (Docket No. 88).

("AIICO") moved for summary judgment on plaintiffs' claims (Docket Nos. 136, 137). On October 3, 2006, Dr. Sixto Medina–Jaca ("Dr. Medina–Jaca") also moved for summary judgment on plaintiffs' claims (Docket No. 143). On November 30, 2006, plaintiffs opposed both motions (Docket Nos. 158–160). For the reasons discussed below, the Court **GRANTS** HHMI and AIICO's motion for summary judgment and **GRANTS in part and DENIES in part**[2] Dr. Medina–Jaca's motion for summary judgment.

## FACTUAL BACKGROUND

On June 25, 2003, at around 9:00 p.m., Bonilla–Colon arrived at HHMI's Emergency Room ("ER") complaining of chest pains. Bonilla–Colon was received by a nurse who took his vital signs and placed him in the ER's acute area. A few minutes later, Dr. Luis Martinez ("Dr. Martinez") evaluated Bonilla–Colon and diagnosed him with angina pectoris, chest pain, and decompensated diabetes. Dr. Martinez immediately ordered some tests as well as treatment for his condition, both of which were promptly administered.

On June 26, 2003, at around 1:30 a.m., Dr. Francisco Aldarondo ("Dr. Aldarondo") arrived at HHMI and evaluated Bonilla–Colon after having discussed the case with Dr. Martinez. Dr. Aldarondo diagnosed Bonilla–Colon with chest pain, uncontrolled hypertension, diabetes mellitus, and a possible myocardial infarction. He recommended that Bonilla–Colon be admitted to HHMI's Intensive Care Unit ("ICU"). Dr. Aldarondo ordered that another EKG be performed and ordered treatment for his condition.

Later that day, Dr. Aldarondo consulted with Dr. Medina–Jaca. He diagnosed Bonilla–Colon with acute anterior wall myocardial infarction. Bonilla–Colon was transferred to the ICU at around 8:45 p.m. that evening when a bed became available. All three physicians followed-up on Bonilla–Colon's condition after he was moved from the ER. While Bonilla–Colon was in the ER he was under constant observation.

## DISCUSSION

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that

---

**2.** Because the Court declines to exercise its supplemental jurisdiction, it will not enter into the merits of the medical malpractice claims against Dr. Medina–Jaca.

demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## B. *Plaintiffs' EMTALA Claims*

EMTALA was enacted in 1986 as a Congressional response to the concern that uninsured, underinsured, and indigent patients were being "dumped" onto other hospitals by medical facilities unwilling to treat them. *See Feighery v. York Hospital*, 59 F.Supp.2d 96, 101–102 (D.Me.1999). The Act created a new cause of action, separate from traditional state medical malpractice. Courts have routinely ex-

plained that EMTALA is not to be treated as a federal malpractice statute. *See Feighery*, 59 F.Supp.2d at 102; *Fuentes Ortiz v. Mennonite General Hospital*, 106 F.Supp.2d 327, 330 (D.P.R.2000).

EMTALA has two key provisions: (1) hospitals must provide appropriate screening to individuals who come to its emergency department; and (2) they must provide the services necessary to stabilize the patient's condition before release or transfer. *See Alvarez–Pumarejo v. Municipality of San Juan*, 972 F.Supp. 86, 87 (D.P.R.1997) (*citing Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995)). The Act does not require a hospital to provide a uniform or minimal level of care to every patient seeking emergency care and does not provide a cause of action for misdiagnosis or improper medical treatment. *Feighery*, 59 F.Supp.2d at 102 (*citing Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir.1998)). These areas are traditionally left to state malpractice laws. The purpose of EMTALA is to bridge the gap not covered by state malpractice laws and to ensure that there be "some screening procedure, and that it be administered even-handedly." *Correa*, 69 F.3d at 1192. "A mere failure to provide medical treatment consistent with generally accepted medical standards is actionable under state tort law." *Torres Otero v. Hospital General Menonita*, 115 F.Supp.2d 253, 260 (D.P.R.2000); *see also Brooks v. Maryland General Hospital, Inc.*, 996 F.2d 708, 710 (4th Cir.1993).

Plaintiffs' main allegation under EMTALA is that HHMI did not stabilize Bonilla–Colon's condition as required before discharging him or transferring him to another institution. Their argument, however, is based on the premise that the treatment Bonilla–Colon received at HHMI was not appropriate for his condition. Thus, their claim is not that he was

not diagnosed and treated as EMTALA requires, but that the treatment was not the correct one for his condition. That question is better left for their medical malpractice claims.

As far as EMTALA is concerned, HHMI and its doctors did what was required. Bonilla–Colon was evaluated and treated in HHMI's ER by at least three different doctors and he was kept under constant observation while there. He was later moved to the ICU, had surgery performed, and only after having spent a week at HHMI was he transferred to another hospital for further treatment. This is hardly the picture of a hospital dumping or refusing to treat a patient for lack of medical insurance. Whether the medical care he received at HHMI was adequate goes beyond EMTALA's purposes. EMTALA is not a medical malpractice statute. *See Feighery,* 59 F.Supp.2d at 102; *Fuentes Ortiz,* 106 F.Supp.2d at 330.

Therefore, plaintiffs have failed to establish a case under EMTALA and their claims must be dismissed.

C. *Supplemental State Law Claims*

Because no federal claims to ground jurisdiction remain in this case the Court having dismissed the EMTALA claims, the Court declines to exercise its supplemental jurisdiction over the state law claims. Plaintiffs' supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** HHMI and AIICO's motion for summary judgment and **GRANTS in part and DENIES in part** Dr. Medina–Jaca's motion for summary judgment. Plaintiffs' EMTALA claims against the hospital and the physicians are dismissed **with prejudice.** Supplemental state law claims against the hospital and the physicians are dismissed **without prejudice.** Because the third-party complaint involves the medical malpractice claims under Article 1802 of the Puerto Rico Civil Code, it is also dismissed without prejudice. Judgment shall enter accordingly.

IT IS SO ORDERED.