Jimmy NEWSOME, Plaintiff,

v.

Dr. Ronald MANN, Pikeville United Methodist Hospital of Kentucky, Inc., Defendants.

No. Civ.A. 99–393.

United States District Court, E.D. Kentucky.

July 24, 2000.

Thomas W. Goodman, Jr, Pikeville, KY, Stephen M. O'Brien, III, Lexington, KY, for Jimmy Newsome, plaintiff.

Kenneth W. Smith, Roberts & Smith, Lexington, KY, for Ronald F. Mann, defendant.

Pamela Todd Robinette, Sharon K. Hager, Carole Friend–Conway, for Pikeville United Methodist Hospital of Kentucky, Inc., dba Pikeville Methodist Hospital, defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Defendant, Pikeville United Methodist Hospital of Kentucky, Inc. (Hospital), has moved for summary judgment on the plaintiff's Emergency Medical Treatment and Active Labor Act (EMTALA) claim. Said Defendant has also moved to renew its motion for summary judgment on the common law malpractice claims against the Hospital [Record No. 28]. The plaintiff has responded to these motions [Record No. 32] to which the defendant has replied [Record No. 35]. Therefore, these matters are ripe for review.

### Standard of Review

In determining whether to grant a motion for summary judgment, the Court must view the facts presented in a light most favorable to the non-moving party. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir.1996). If the Court finds that there is no genuine issue of material fact, summary judgment may be granted. *See Street v. J.C. Bradford,* 886 F.2d 1472, 1479 (6th Cir.1989). The Sixth Circuit has held that "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street,* 886 F.2d at 1478.

### Factual Background

On May 19, 1995, after consuming alcohol, Jimmy Newsome fell from his porch and struck his head on concrete. He was seen in the emergency room of the defendant Hospital by Dr. Ronald F. Mann. Dr. Mann received medical information from Newsome's family, who indicated that Newsome had a history of seizure disorders and that his current condition may have been the result of a seizure. Dr. Mann ordered X-rays and a CAT scan, which his family refused. Newsome's family members had witnessed a number of his seizures and felt that Newsome's disorientation was linked to his normal post seizure symptoms. Newsome was dis-

charged to the care of his family members and Dr. Mann indicated that Newsome should return if the symptoms became more serious.

Approximately 14 hours later, the plaintiff's condition declined and his family took him to another emergency room in Jenkins, Kentucky. After a CAT scan, Plaintiff was diagnosed with an aneurysm and was taken to Holston Valley Hospital in Kingsport, Tennessee, where he underwent surgery and spent 17 days recovering from said surgery.

This action was originally filed in Pike Circuit Court on May 14, 1996. In October 1999, Plaintiff amended his complaint to include a federal claim under 42 U.S.C. 1395, which allowed the defendant to remove his case to federal court. This federal EMTALA claim is now at issue.

## EMTALA Claim

In discussing the legislative intent behind EMTALA, the Sixth Circuit wrote:

"It is undisputed that the impetus to this legislation came from highly publicized incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a medical screening that would have been provided a paying patient, or transferred or discharged a patient without taking steps that would have been taken for a paying patient. Apparently dissatisfied with the effect of laws that had been limited to hospitals that received funds from the government under the Hill–Burton Act, 42 U.S.C. §§ 291 to 291 o–1, Congress chose to attempt to meet the perceived evil by enacting [EMTALA]."

*Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir.1990).

In *Cleland*, the Sixth Circuit looked to define the meaning behind the ambiguous EMTALA phrase which compels doctors and hospitals to provide "an appropriate medical screening examination." *Id.* The Sixth Circuit defined "appropriate" to "preclude[ ] resort to a malpractice or other objective standard[s] of care". *Id.* at 272. A finding of improper motives must be made to establish the inappropriate care necessary to uphold a violation of EMTALA. *Id.*

Plaintiff cites *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999), as overruling this Circuit's "improper motives" requirement. However, Plaintiff misreads *Roberts*. The U.S. Supreme Court was ruling on an EMTALA claim involving stabilization/discharge[1]. This prong of EMTALA does not have the requirement of "appropriate medical screening"; therefore the improper motives requirement does not apply.

The case before us is clearly a case that falls under the "appropriate medical screening" clause[2] of EMTALA as Dr.

1. In *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999), the Court specifically noted that "[u]nlike the provision of EMTALA at issue in *Cleland*, § 1395dd(a), the provision at issue in this case, § 1395dd(b), contains no requirement of appropriateness." *Id.* at 686. While a footnote in this case does indicate that the Sixth Circuit's requirement of "improper motive" is in the minority, the Court also states that the " 'appropriate medical screening requirement' is not before us, and we express no opinion on it here." *Id.* at 687 (internal citations omitted). Therefore, *Cleland* is still the governing case law in this Circuit and this Court must require the showing of "improper motive" to allow Plaintiff to recover on his § 1395dd(a) claim.

2. Plaintiff's complaint indicates that this cause of action falls under EMTALA's "stabilization/discharge" component. However, it is clear that Plaintiff is unable to sustain such a claim. In order to proceed under EMTALA's stabilization/discharge component, the plaintiff must show that "the hospital determine[d] that the individual ha[d] an emergency medical condition." 42 U.S.C. § 1395dd(b)(1).

In the case at bar, Plaintiff claims that Dr. Mann and the defendant Hospital failed to diagnose Newsome's hematoma. Both parties acknowledge that Newsome's family told Dr. Mann that Newsome was an alcoholic who had frequent seizures and that his post seizure recovery often included disorientation and other behaviors observed that evening in the emergency room. Therefore, there is nothing in the record to indicate that Dr. Mann was aware of any "emergency medical condition" as required under 42 U.S.C. § 1395dd(b)(1).

Mann and the defendant Hospital failed to determine that Newsome sustained an injury that created an "emergency medical condition." 42 U.S.C. 1395dd(b)(1). Therefore, in order to recover, Plaintiff must put forth evidence of "improper motive" on the part of Dr. Mann or the defendant Hospital. Plaintiff has put forth no such evidence. Plaintiff does not even allege that the defendants failed to screen or diagnose Newsome's hematoma based on their inappropriate feelings about Newsome's ability to pay, his race, his gender, his political beliefs, or his social status. *See Cleland*, 917 F.2d at 272. Plaintiff does not even allege that Defendants' failure to screen grew from some spite or personal animus against Newsome.[3] Without evidence of improper motive, the Court cannot sustain Plaintiff's EMTALA claim. Summary judgment will be granted to the defendants and Plaintiff's § 1395dd claim will be dismissed.

**Supplemental Jurisdiction**

The remaining claim against the defendant Hospital is not a federal cause of action. As this case was removed due to federal question jurisdiction, the Court declines to exercise jurisdiction over the remaining supplemental state claim. 28 U.S.C.A. § 1367(c)(3) allows a district court to "decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." *Id.* Therefore, the remaining claim against the

Hospital shall be remanded back to state court.

Accordingly; **IT IS ORDERED:**

(1) That the defendants' motion for summary judgement on Plaintiff's EMTALA claim be, and the same hereby is, **GRANTED;**

(2) That the remaining malpractice claim against the Hospital be, and the same hereby is, **REMANDED** to the Pike Circuit Court and **STRICKEN FROM THE ACTIVE DOCKET.**

---

In his reply, Plaintiff appears to request that this Court view his EMTALA claim under 42 U.S.C. § 1395dd(a) and find that Defendants did not "appropriately" screen Newsome. As the bulk of the argument in both parties' briefs revolve around 42 U.S.C. § 1395dd(a), this Court will review this case under the standards set forth in that statute.

3. *Cleland* indicates that a "hospital that provides substandard ... or nonexistent medical screening for any reason [listed reasons omitted] ... may be liable under [§ 1395dd(a)]." *Cleland*, 917 F.2d at 272. The Sixth Circuit lists a number of factors that may evidence the improper motive required by this subsection. The Court notes that "drunkenness" may cause a doctor to fail to properly screen

a patient. *Id.* While this factor may be relevant in the case at bar, the plaintiff never indicates that the defendants failed to diagnose Newsome's hematoma because they shrugged Newsome's symptoms off as the behavior of a drunk. Both parties acknowledge that Newsome's family and Dr. Mann appeared to believe that Newsome's symptoms stemmed from his post seizure activity and that such symptoms were normally experienced by Newsome. As the Plaintiff never claimed that Dr. Mann was improperly motivated to forgo screening of Newsome due to his intoxication, the Court cannot attribute this argument to the plaintiff. Plaintiff has not produced "sufficient evidence" on this point. *Street*, 886 F.2d at 1478.