ROBERTS, GUARDIAN FOR JOHNSON *v.* GALEN OF VIRGINIA, INC., FORMERLY DBA HUMANA HOSPITAL-UNIVERSITY OF LOUISVILLE, DBA UNIVERSITY OF LOUISVILLE HOSPITAL

No. 97–53. Argued December 1, 1998—Decided January 13, 1999

*Joseph H. Mattingly III* argued the cause and filed briefs for petitioner.

*James A. Feldman* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler,* and *Barbara C. Biddle.*

*Carter G. Phillips* argued the cause for respondent. With him on the brief were *Jacqueline Gerson Cooper* and *Thomas S. Calder.**

PER CURIAM.

The Emergency Medical Treatment and Active Labor Act (EMTALA), as added by § 9121(b) of the Consolidated Omnibus Budget Reconciliation Act of 1985, 100 Stat. 164, and as amended, 42 U. S. C. § 1395dd, places obligations of screening and stabilization upon hospitals and emergency rooms that receive patients suffering from an "emergency medical condition." The Court of Appeals held that in order to recover in a suit alleging a violation of § 1395dd(b), a plaintiff must prove that the hospital acted with an improper motive in failing to stabilize her. Finding no support for such a requirement in the text of the statute, we reverse.

Section 1395dd(a) imposes a "[m]edical screening requirement" upon hospitals with emergency departments: "[I]f any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U. S. C. § 1395dd(a). Section 1395dd(b), entitled "Necessary

---

*\*Martha F. Davis* filed a brief for the NOW Legal Defense and Education Fund et al. as *amici curiae* urging reversal.

*Thomas W. Merrill, Michael L. Ile, Leonard A. Nelson,* and *Robert M. Portman* filed a brief for the American Hospital Association et al. as *amici curiae* urging affirmance.

stabilizing treatment for emergency medical conditions and labor," provides in relevant part as follows:

"(1) In general

"If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

"(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

"(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section. . . ."

Section 1395dd(c) generally restricts transfers of unstabilized patients, and § 1395dd(d) authorizes both civil fines and a private cause of action for violations of the statute.

Wanda Johnson was run over by a truck in May 1992, and was rushed to respondent's hospital, the Humana Hospital-University of Louisville, in Louisville, Kentucky (Humana). Johnson had been severely injured and had suffered serious injuries to her brain, spine, right leg, and pelvis. After about six weeks' stay at Humana, during which time Johnson's health remained in a volatile state, respondent's agents arranged for her transfer to the Crestview Health Care Facility, across the river in Indiana. Johnson was transferred to Crestview on July 24, 1992, but upon arrival at that facility, her condition deteriorated significantly. Johnson was taken to the Midwest Medical Center, also in Indiana, where she remained for many months and incurred substantial medical expenses as a result of her deterioration. Johnson applied for financial assistance under Indiana's Medicaid program, but her application was rejected on the ground that she had failed to satisfy Indiana's residency requirements. Petitioner Jane Roberts, Johnson's guardian, then filed this

federal action under § 1395dd(d) as codified, alleging violations of § 1395dd(b).

The District Court granted summary judgment for respondent on the grounds that petitioner had failed to show that " 'either the medical opinion that Johnson was stable or the decision to authorize her transfer was caused by an improper motive.' " 111 F. 3d 405, 407 (CA6 1997). The Court of Appeals affirmed, holding that in order to state a claim in an EMTALA suit alleging a violation of § 1395dd(b)'s stabilization requirement, a plaintiff must show that the hospital's inappropriate stabilization resulted from an improper motive such as one involving the indigency, race, or sex of the patient. *Id.*, at 411. In order to decide whether subsection (b) imposes such a requirement, we granted certiorari, 524 U. S. 915 (1998), and now reverse.

The Court of Appeals' holding—that proof of improper motive was necessary for recovery under § 1395dd(b)'s stabilization requirement—extended earlier Circuit precedent deciding that the "appropriate medical screening" duty under § 1395dd(a) also required proof of an improper motive. See *Cleland* v. *Bronson Health Care Group, Inc.*, 917 F. 2d 266 (CA6 1990). The Court of Appeals in *Cleland* was concerned that Congress' use of the word "appropriate" in § 1395dd(a) might be interpreted incorrectly to permit federal liability under EMTALA for any violation covered by state malpractice law. *Id.*, at 271. Accordingly, rather than interpret EMTALA so as to cover "at a minimum, the full panoply of state malpractice law, and at a maximum, . . . a guarantee of a successful result" in medical treatment, *ibid.*, the Court of Appeals read § 1395dd(a)'s "appropriate medical screening" duty as requiring a plaintiff to show an improper reason why he or she received "less than standard attention [upon arrival] . . . at the emergency room," *id.*, at 272.

Unlike the provision of EMTALA at issue in *Cleland*, § 1395dd(a), the provision at issue in this case, § 1395dd(b), contains no requirement of appropriateness. Subsection

(b)(1)(A) requires instead the provision of "such further medical examination and such treatment as may be required to stabilize the medical condition." 42 U. S. C. § 1395dd(b)(1)(A). The question of the correctness of the *Cleland* court's reading of § 1395dd(a)'s "appropriate medical screening" requirement is not before us, and we express no opinion on it here.[1] But there is no question that the text of § 1395dd(b) does not require an "appropriate" stabilization, nor can it reasonably be read to require an improper motive. This fact is conceded by respondent, which notes in its brief that "the 'motive' test adopted by the court below . . . lacks support in any of the traditional sources of statutory construction." Brief for Respondent 17. Although the concession of a point on appeal by respondent is by no means dispositive of a legal issue, we take it as further indication of the correctness of our decision today, and hold that § 1395dd(b) contains no express or implied "improper motive" requirement.

Although respondent presents two alternative grounds for the affirmance of the decision below,[2] we decline to address these claims at this stage in the litigation. The Court granted certiorari on only the EMTALA issue, and these claims do not appear to have been sufficiently developed

---

[1] We note, however, that *Cleland*'s interpretation of subsection (a) is in conflict with the law of other Circuits which do not read subsection (a) as imposing an improper motive requirement. See *Summers* v. *Baptist Med. Center Arkadelphia*, 91 F. 3d 1132, 1137–1138 (CA8 1996) (en banc); *Correa* v. *Hospital San Francisco*, 69 F. 3d 1184, 1193–1194 (CA1 1995); *Repp* v. *Anadarko Munic. Hospital*, 43 F. 3d 519, 522 (CA10 1994); *Power* v. *Arlington Hospital Assn.*, 42 F. 3d 851, 857 (CA4 1994); *Gatewood* v. *Washington Healthcare Corp.*, 933 F. 2d 1037, 1041 (CADC 1991).

[2] Respondent argues that the record demonstrates that it did not have actual knowledge of the patient's condition, and that the hospital properly screened Johnson, which terminated its duty under EMTALA. We express no opinion as to the factual correctness or legal dispositiveness of these claims, and leave their resolution to the courts below on remand.

below for us to assess them in any event. Accordingly, we reverse the Court of Appeals' holding that the District Court's grant of summary judgment was proper and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*