Jane ROBERTS, as Guardian for
Wanda Y. Johnson, Plaintiff,

v.

GALEN OF VIRGINIA, INC. d/b/a University of Louisville Hospital formerly d/b/a Humana Hospital–University of Louisville, Defendant.

No. CIV.A. 93–0544L–S.

United States District Court,
W.D. Kentucky.
at Louisville.

April 27, 2000.

Robert Spragens, jr., Spragens, Smith & Higdon, Lebonon, KY, Joseph H. Mattingly, III, Lebanon, KY, for plaintiff.

Bryan Todd Thompson, Millicent Todd Thompson, Thompson & Miller, Louisville, KY, for defendant.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the Court on motion of the defendant, Galen of Virginia, Inc. d/b/a University of Louisville Hospital, formerly d/b/a Humana Hospital–University of Louisville ("Humana"), for summary judgment pursuant to this Court's Order entered November 2, 1999. For the reasons set forth below, the defendant's motion will be denied.

## FACTS AND PROCEDURAL HISTORY

The facts of this case, as stated by the United States Supreme Court in *Roberts, guardian for Wanda Y. Johnson v. Galen of Virginia, Inc. formerly d/b/a Humana Hospital University of Louisville*, 525 U.S. 249, 119 S.Ct. 685, 142 L.Ed.2d 648 (1999), are as follows:

Petitioner Wanda Johnson was run over by a truck in May 1992, and was rushed to respondent's hospital, The Humana Hospital–University of Louisville, in

Louisville, Kentucky (Humana). Johnson had been severely injured and had suffered serious injuries to her brain, spine, right leg, and pelvis. After about six weeks' stay at Humana, during which time Johnson's health remained in a volatile state, respondent's agents arranged for her transfer to the Crestview Health Care Facility, across the river in Indiana. Johnson was transferred to Crestview on July 24, 1992, but upon arrival at that facility, her condition deteriorated significantly. Johnson was taken to the Midwest Medical Center, also in Indiana, where she remained for many months and incurred substantial medical expenses as a result of her deterioration. Johnson applied for financial assistance under Indiana's Medicaid program, but her application was rejected on the grounds that she had failed to satisfy Indiana's residency requirements. Plaintiff Jane Roberts, Johnson's guardian, then filed this federal action under § 1395dd(d) of EMTALA [Emergency Medical Treatment and Active Labor Act], alleging violations of § 1395dd(b) of the Act.

The District Court granted summary judgment for respondents on the grounds that the plaintiffs had failed to show that "either the medical opinion that Johnson was stable or the decision to authorize her transfer was caused by an improper motive." The Court of Appeals affirmed, holding that in order to state a claim in an EMTALA suit alleging a violation of § 1395dd(b)'s stabilization requirement, a plaintiff must show that the hospital's inappropriate stabilization resulted from improper motive such as one involving the indigency, race, or sex of the patient.

*Id.* at 686.

The Supreme Court held that § 1395dd(b) contains no express or implied "improper motive" requirement, and reversed and remanded this case for further proceedings consistent with the opinion. On remand, the Court of Appeals remanded the case to this Court for further proceedings. The Court of Appeals noted that the Supreme Court reversed only on the EMTALA claim, thus leaving intact this Court's grant of summary judgment in favor of the defendant on the other claims.

**STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(C). A party's failure to establish an element of proof essential to his case and upon which he will bear the burden of proof at trial constitutes a failure to establish a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**DISCUSSION**

Humana argues that it is entitled to summary judgment on Johnson's EMTALA claim because: (1) there is no evidence that the acts of Humana resulted in Johnson's transfer and subsequent injury, and (2) Humana satisfied the legal requirements of EMTALA as a matter of law. Before reaching the merits of these arguments, however, this Court must address the argument of the plaintiff that these issues are foreclosed to Humana because: (1) Human failed to raise these issues before this Court's previously established deadline for filing dispositive motions, and (2) these defenses are now the "law of the case" because Humana failed to cross-appeal this Court's previous findings.

The arguments now raised by Humana in this current motion for summary judgment are in response to new law outlined by the Supreme Court. This Court based its original decision to grant summary judgment on the lack of evidence of im-

proper motive on the part of the hospital. This improper motive requirement was consistent with the law of this jurisdiction at the time. Thus, the arguments of Humana now before this Court were not fully developed in the original dispositive motions. Indeed, these are the issues that were specifically remanded by the Supreme Court:

Respondents argue that the record demonstrates that [sic] did not have actual knowledge of the patient's condition, and that the hospital properly screened Johnson, which terminated its duty under EMTALA. We express no opinion as to the factual correctness or legal dispositiveness of these claims, and leave their resolution to the courts below on remand.

*Roberts,* 119 S.Ct. at 687, n. 2.

█ Additionally, the "law of the case" doctrine does not apply in this case because these issues were not conclusively decided in a prior appeal. This Court never reached these issues because, under the existing law, these claims were dismissible for lack of improper motive. Thus, the issues were not properly addressable on appeal as noted by the Supreme Court:

Although respondent presents two alternative grounds for the affirmance of the decision below, we decline to address these claims at this stage in the litigation. The Court granted certiorari on only the EMTALA issue, and these claims do not appear to have been sufficiently developed below for us to assess them in any event.

*Id.*

Thus, Humana is permitted the latitude to make these arguments now in a renewed motion for summary judgment.

Humana first argues that it is entitled to summary judgment because there was no causal link between the acts of Humana and Johnson's discharge. Humana argues that the physicians alone made the decision to discharge Johnson, and that no hospital administrator or nurse was responsible for the decision. Because this Court and the Court of Appeals have conclusively established that there was no apparent nor ostensible agency on the part of the hospital for the acts of the physicians, Humana contends that Johnson cannot prove that her transfer was "caused" by the hospital. Johnson argues that EMTALA imposes direct, rather than vicarious liability upon Humana, and that EMTALA restricts patient "transfers" as well as "discharges."

We agree with Johnson that EMTALA's coverage is broader than just the discharge of patients. EMTALA specifically restricts "transfers" of unstable patients from hospitals. *See* 42 U.S.C. § 1395dd(c). EMTALA defines "transfer" as follows:

The term "transfer" means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital . . .

42 U.S.C. § 1395dd(e)(4).

Consideration of the hospital's conduct in transferring Johnson is not limited to that of the discharging physician. There is evidence that Nancy Fred, a Humana employee, was a significant participant in the decision to transfer Johnson from Humana to Crestview.

█ As noted above, Humana argues that Johnson's discharging surgical resident is not its ostensible agent and that it cannot be held liable for any EMTALA violation by that resident. This Court's previous holding that the discharging physician was not Humana's ostensible agent, and the Sixth Circuit's affirmance of that holding, were directed only toward Johnson's pendant claim under state law for medical negligence. The definition of "transfer" noted above makes it clear that Congress intended to hold hospitals directly accountable for the actions of physicians and other medical personnel. The definition imposes liability upon the hospital for the actions of persons "affiliated or associ-

ated, directly or indirectly" with the hospital. The surgical resident that made the decision to transfer Johnson in this case falls within that definition, and Humana could be held directly accountable under EMTALA for his actions.

The Secretary of Health and Human Services supports the notion that hospitals are directly rather than vicariously liable for the actions of physicians:

> The statute imposes duties on a hospital, many of which can only be effectively carried out by physicians in some way affiliated with the hospital. Neither the statute nor the regulations attempt to define the means by which the hospital meets its statutory obligations to provide emergency screening examination, treatment or transfer.

59 Fed.Reg. 32,086, 32,115 (1994).

Thus, Johnson has shown a genuine issue of material fact as to causation.

Humana also argues it is entitled to summary judgment on Johnson's EMTALA claim because EMTALA does not apply to medical decisions rendered in the course of long term health care treatment where no emergency medical condition exists. Humana argues that it gave Johnson appropriate treatment when she first arrived at the hospital which extinguished its duty under EMTALA. Humana further contends that on the date of Johnson's transfer, her treating physician did not consider Johnson's condition to be an emergency one which would require stabilization before her transfer.

It is undisputed that Johnson was in an emergency medical condition when she arrived at Humana. Once an emergency medical condition is detected, the treatment required to stabilize a patient is defined as that which is "necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from the facility ..." 42 U.S.C. § 1395dd(e)(3)(A). EMTALA prohibits transfer of a patient unless that patient is stabilized. *See* 42 U.S.C. § 1395dd(c). As noted by this Court in its original opinion in this case, and affirmed by the Court of Appeals, there is a genuine issue of material fact as to whether Johnson was stabilized prior to her transfer to Crestview. A reasonable jury may find that Johnson was still in an emergency medical condition and not stabilized on the day of her transfer, and that she suffered damages as a result of Humana's actions in violation of EMTALA. Thus, construing the evidence and all the reasonable inferences in the light most favorable to Johnson, genuine issues of material fact exist which preclude summary judgment in favor of Humana. A separate order will be entered herein this date in accordance with this opinion.