[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12708
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cr-00033-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANCE BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 17, 2013)

Before HULL, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Lance Brown appeals his conviction and sentence on three grounds.  First, Brown argues his conviction followed an incorrect jury instruction.  Second, Brown claims the custodial and halfway house components of his sentence are substantively unreasonable.  Third, Brown argues the order directing him to make immediate restitution in the amount of $1,450 was factually and legally unsupported.  After careful review of the record and the parties' briefs, we dismiss as moot Brown's challenge to his completed prison term and affirm the district court as to all other issues.[1]

## I.    The Supplemental Jury Charge

Brown was indicted for malicious mischief, in violation of 18 U.S.C. § 1361, for throwing a brick through the glass doors of the United States Courthouse and Post Office in Columbus, Georgia.  To convict Brown of the offense as charged in the indictment, the Government needed to prove he "willfully injure[d] and commit[ed] a depredation against any property of the United States . . . resulting in more than $1,000 in damages."  According to undisputed testimony at trial, the glass doors—which Brown admitted destroying—cost $1,437 to replace.

---

[1] We deny Brown's Motion to Strike the Government's Supplemental Expanded Record Excerpts and References Thereto.  The challenged excerpts recite post-conviction facts that speak solely to whether this Court retains jurisdiction over Brown's challenge to his prison term. The excerpts do not introduce new legal issues, but rather show that one ever-present, unavoidable issue—mootness—divests this Court of jurisdiction.  Given these unique circumstances, we deny Brown's motion to strike.

During deliberations, the jury sent a question to the court, asking whether "damage" meant "what was damaged" or whether the term meant "replacement cost and/or labor." After a colloquy with counsel, in which defense counsel objected but offered no constructive alternative, the court instructed the jury that "damage" meant "the reasonable cost of repairing the damaged property." Thereafter, the jury unanimously found Brown guilty as charged.

Brown argues the district court committed reversible error in its supplemental instruction defining "damage," because the ordinary meaning of that term includes a great deal more than simply the reasonable cost of repair. Brown's argument is meritless. Although this Court reviews jury instructions de novo, "[o]ur practice is not to nitpick the instructions for minor defects." *Holland v. Gee*, 677 F.3d 1047, 1067 (11th Cir. 2012). Supplemental charges are reviewed "as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel." *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009). So long as the instructions, "taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete, or otherwise subject to criticism." *Holland*, 677 F.3d at 1067.

The district court did not err in issuing the supplemental charge defining "damage" under 18 U.S.C. § 1361. When a statutory term is undefined, courts

3

give it its "ordinary meaning," and may look to dictionaries when doing so. *Lopez*, 590 F.3d at 1248. In this case, the district court did not explicitly rely on dictionaries, but its supplemental instruction comports with legal and non-legal dictionary definitions of "damage" or "damages."[2] Thus, when viewing the instructions holistically, we have no doubt "the jury was properly guided in its deliberations," *id.*, even if the supplemental charge did not encompass every variant meaning of the term "damage," *cf. United States v. Williams*, 642 F.2d 136, 140 (5th Cir. 1981) (stressing that jury instructions should "reasonably relate to the factual situation of the case").[3]

Equally meritless is Brown's contention the supplemental charge somehow created a conclusive presumption of guilt. In this case, "no reasonable juror could have interpreted the words of the" supplemental charge "to require a certain ultimate conclusion upon the finding of a subsidiary evidentiary fact." *United States v. Gaines*, 690 F.2d 849, 853 (11th Cir. 1982). The jury was clearly entitled to find that, although $1,437 was the *actual* cost of replacing the doors, it was

---

[2] *See, e.g.*, Black's Law Dictionary (9th ed. 2009) (defining "damages" as "an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses"); Webster's Third New International Dictionary 571 (1993) (defining "damages" as "the loss due to injury; the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury"); IV Oxford English Dictionary 224 (2d ed. 1989) (defining "damages" as the "value, estimated in money, of something lost or withheld; the sum of money claimed or adjudged to be paid in compensation for loss or injury sustained").

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

nonetheless not a *reasonable* cost of repairing the damaged property. Simply because the jury found the actual replacement costs persuasive evidence of damages, or reasonable repair costs, does not mean they were mandated to do so in an unconstitutional sense. *Cf. United States v. Dean*, 517 F.3d 1224, 1231 (11th Cir. 2008). There simply is no "reasonable likelihood" this jury thought they were *required* to find a particular elemental fact—*i.e.*, damages or reasonable cost of repairs over $1,000—based solely on proof of an evidentiary fact—*i.e.*, $1,437 in replacement costs. *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). Accordingly, because the Government was required to, and did, carry its burden of proving Brown's guilt beyond a reasonable doubt, we affirm Brown's conviction.

## II.    The Prison Term and Supervised Release

Next, Brown challenges his sentence. Among other things, the district court sentenced Brown to a 329-day prison term followed by two years of supervised release including six months in a halfway house. Brown argues his sentence was substantively unreasonable and that the district court extended his prison term for impermissible reasons.

As a threshold matter, we must determine whether we have jurisdiction over Brown's challenges. Pursuant to Article III of the United States Constitution, federal courts have authority to hear only live cases and controversies. *Hernandez v. Wainwright*, 796 F.2d 389, 390 (11th Cir. 1986). A dispute is no longer live

5

when it becomes moot—that is, when the Court can no longer provide meaningful relief to the claimant. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008). Completion of a prison term moots a challenge to the term of confinement, *United States v. Farmer*, 923 F.2d 1557, 1568 (11th Cir. 1991), unless a claimant shows the completed term has collateral legal consequences, *Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998).

In this case, Brown's challenges to the 329-day prison term are moot. Brown completed that prison term in June 2012 and has not identified any collateral legal consequences that would flow from it. Although Brown was subsequently sentenced to 24 months' imprisonment for violating the supervised release, Brown has pursued no remedy in relation to the 329-day prison term that would impact his current or future circumstances. Even vacating Brown's completed prison term would not vacate or reduce the supervised release he violated, nor would it vacate or reduce the term of confinement he is currently serving. Because federal courts are not "in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," *Spencer*, 523 U.S. at 18, this Court cannot grant Brown meaningful relief as to his completed 329-day prison term. Brown's challenges to that component of his sentence are therefore dismissed as moot.

This Court retains jurisdiction, however, over Brown's claim that a two-year

6

period of supervised release was substantively unreasonable. *See Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995). This Court reviews substantive unreasonableness claims for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). To prevail, Brown must establish unreasonableness, *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008), based on the factors enumerated under 18 U.S.C. § 3553(a)—retribution, deterrence, incapacitation, and rehabilitation, *see Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011). Remand is warranted only when, based on a totality of the circumstances pertinent to sentencing, we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Pugh*, 515 F.3d at 1191.

Brown has not shown his sentence is substantively unreasonable or that the district court abused its discretion in imposing supervised release. In imposing the term of supervised release, the district court appropriately weighed the § 3553(a) factors, concluding Brown needed treatment and rehabilitation. Brown's history is dotted with violent, threatening, and recalcitrant behavior: two convictions for bank robbery involving threats of mass casualties; failure to attend court-ordered mental health treatment; termination from mental health treatment after threatening a counselor; and an arrest for physically attacking his mother. The district court

7

did not abuse its discretion in considering such rehabilitative concerns when imposing supervised release. *See* 18 U.S.C. § 3583(c); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Accordingly, we dismiss as moot Brown's challenge to his completed prison term and affirm Brown's sentence as to supervised release.

### III.    The Restitution Order

Finally, Brown challenges the district court's $1,450 restitution order. Brown first contends the order should be vacated because the district court did not factually account for the $13 difference between the restitution amount and the evidence of loss adduced at trial. Second, Brown argues that, in ordering immediate payment of restitution, the district court impermissibly overlooked his financial resources and inability to pay.

Ordinarily, the legality of a restitution order is reviewed de novo and its factual findings are reviewed for clear error. *United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008). But when, as here, a defendant fails to object to the restitution order at sentencing, we review only for plain error.[4] *United States v.*

---

[4] In this case, defense counsel failed to object with adequate specificity. Although trial counsel registered his objection "to the sentence," he did not specify which component of the sentence he was objecting to, nor did he specify the grounds for his objection. Merely

8

*Odom*, 252 F.3d 1289, 1299 (11th Cir. 2001).  Under plain error review, the burden

is on the defendant to establish: (1) error, (2) that is plain, and (3) that affects

substantial rights.  *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir.

2005).  If all three conditions are met, a court may exercise its discretion to notice

a forfeited error, but only if (4) the error "seriously affects the fairness, integrity, or

public reputation of judicial proceedings."  *Id.*

Brown has not shown plain error as to either of his challenges to the

restitution order.  First, Brown accurately observes the restitution amount exceeds

the Government's proven losses by $13.  But Brown has not shown, among other

things, that this purported error seriously affected the fairness, integrity, or public

reputation of judicial proceedings.  The Mandatory Victims Restitution Act

(MVRA) obligates district courts to order restitution for offenses against property,

18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), based on "the full amount of each victim's

losses as determined by the court," 18 U.S.C. § 3664(f)(1)(A).  The amount of

---

"object[ing] to the sentence" is insufficient; objections are intended to alert a court to the *actual basis* of asserted error.  *See* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); *see also United States v. Sorondo*, 845 F.2d 945, 948–49 (11th Cir. 1988) (stressing the importance of contemporaneous objections).  As Judge Wilkinson of the Fourth Circuit recently noted, the need to object with specificity "is not a meaningless ritual."  *United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012).  Much to the contrary, a "clear objection" is essential to allowing "a trial court to correct possible error in short order and without the need for an appeal."  *Id.*; *see also United States v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998) (emphasizing the need for clear, on-the-record objections so that trial courts may correct errors "before substantial judicial resources are wasted on appeal").

restitution "must be supported by specific factual findings," *United States v. Singletary*, 649 F.3d 1212, 1222 (11th Cir. 2011), but it need not be calculated with precision, *United States v. Futrell*, 209 F.3d 1286, 1291–92 (11th Cir. 2000). The amount of restitution may be approximated "so long as the basis for reasonable approximation is at hand." *Id.* at 1292.

Even assuming the district court had no "basis for reasonable approximation," Brown has not shown the $13 discrepancy seriously affects the fairness, integrity, or public reputation of judicial proceedings. Such a finding is generally reserved for cases of actual innocence or where a miscarriage of justice would otherwise result. *See United States v. Olano*, 507 U.S. 725, 736–37 (1993). Here, however, the district court—without objection from defense counsel—relied on the pre-sentence investigation report's (PSI) recommendation of $1,450 in restitution. Defense counsel's failure to object to that recommendation constitutes an admission that $1,450 was the correct amount of restitution. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Put simply, when based on the undisputed facts in a PSI, a purported discrepancy of less than 1% of the total restitution order does not result in a miscarriage of justice or plain error.[5]

---

[5] On appeal, the Government agrees with Brown that no specific factual findings support the additional $13 in restitution. The Government asks this Court to vacate the restitution order and instruct that it be reduced by $13. Although the Government's candor is laudable, plain error is a matter for the courts to determine independently, and therefore "the concession of a point on appeal . . . is by no means dispositive of a legal issue." *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999); *see also United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009)

Brown has similarly failed to show the district court plainly erred in ordering immediate payment of restitution. As a default, the MVRA requires immediate payment, "unless, in the interest of justice," the court decides another method of payment specified in § 3664(f)(3)(A) is more appropriate. *See* 18 U.S.C. §§ 3664(f)(2)–(3) and 3572(d). In making that determination, a sentencing court considers (A) the defendant's "financial resources and other assets," (B) the defendant's "projected earnings and other income," and (C) "any financial obligations of the defendant." § 3664(f)(2)(A)–(C). After considering the above, the court "may direct the defendant to make nominal periodic payments" if the defendant proves by a preponderance that his "economic circumstances . . . do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." § 3664(f)(3)(B); *see also* § 3664(e) (providing that the defendant bears the burden of proving his financial resources).

Brown claims the court plainly erred in not ordering nominal periodic payments. Brown's argument is meritless. The text of the MVRA clearly states that even when a defendant shows a lack of financial resources, district courts are not *required* to impose anything other than immediate payment. *See*

(noting courts are not required to accept the Government's concessions). We decline to accept the Government's position for the reasons stated above.

11

§ 3664(f)(3)(B) (providing that the court "*may* direct the defendant to make nominal periodic payments" (emphasis added)).  Because the district court was under no obligation to set a periodic payment schedule, ordering Brown to pay immediate restitution was not plain error.  We affirm the district court's restitution order.

## IV.    Conclusion

For the foregoing reasons, Brown's conviction is affirmed, his challenge to the completed prison term is dismissed as moot, and the remainder of his sentence is affirmed.

**AFFIRMED IN PART and DISMISSED AS MOOT IN PART.**