NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0122n.06

Case No. 17-1949

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMIE ELMHIRST, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| MCLAREN NORTHERN MICHIGAN, d/b/a | ) | |
| Northern Michigan Emergency Medicine Center, | ) | |
| and MCLAREN HEALTH CARE | ) | OPINION |
| CORPORATION, jointly and severally, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: GILMAN, ROGERS, and STRANCH, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Jamie Elmhirst appeals the dismissal of her claims, brought under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, against McLaren Northern Michigan and McLaren Health Care Corporation (collectively, the Hospital), where Elmhirst was treated in May 2015. In this suit, Elmhirst alleges that, although she exhibited symptoms of a dangerous condition known as vertebral dissection when she arrived at the Hospital's emergency center and requested treatment, the Hospital neglected to screen her for that condition and, as a result, discharged her without stabilizing the condition or even detecting it. She further alleges that the undetected condition caused her to suffer a stroke shortly thereafter, leaving her permanently disabled.

The district court dismissed Elmhirst's claims because her complaint did not plead any facts showing that the Hospital's purported failure to provide an appropriate medical screening was due to any "improper motive" on its part, as required by *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266 (6th Cir. 1990). On appeal, Elmhirst does not dispute this defect in her pleadings, but urges us to abrogate *Cleland*'s improper-motive requirement because our sister circuits have uniformly rejected it, and because the Supreme Court has purportedly disapproved of it as well. The holding in *Cleland*, however, is binding on this panel. We therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Elmhirst alleges that in the year before her treatment at the Hospital, she periodically received treatment from a chiropractor. At her last chiropractic appointment, on April 27, 2015, the chiropractor manipulated her neck with particular force. Afterwards, Elmhirst experienced dizziness, headache, nausea, and trouble sleeping. (*Id.*) She sought treatment at the Hospital nine days later, "present[ing] . . . with the aforementioned . . . complaints and history of chiropractic manipulations." (*Id.*)

Elmhirst was examined at the Hospital by Dr. Craig Reynolds, who prescribed a medicine called Antivert and discharged her with instructions to "take it easy." Although Elmhirst exhibited symptoms consistent with vertebral dissection, which is known to result from excessive chiropractic manipulation of the neck, Dr. Reynolds did not screen her for that condition. (*Id.*)

Elmhirst's symptoms worsened after her discharge. (*Id.*) This caused her to return to the Hospital four days later, where she was examined by Dr. Roger Gietzen, a neurologist. (*Id.*) He

determined that she had suffered a stroke caused by vertebral dissection. (*Id.*) Dr. Piyush Patel, an internist at the Hospital, corroborated this assessment and identified chiropractic manipulation as a potential underlying cause. (*Id.*)

## B. Procedural background

Elmhirst filed her complaint in April 2017, alleging that the Hospital (1) failed to provide her with an appropriate medical screening, in violation of 42 U.S.C. § 1395dd(a), and (2) failed to stabilize her medical condition before discharging her, in violation of 42 U.S.C. § 1395dd(b). In response, the Hospital filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Granting that motion, the district court dismissed Elmhirst's screening claim because her complaint lacked any factual support for the allegation that the Hospital's purported failure to provide an appropriate medical screening was due to any "improper motive" on its part. The court also dismissed her stabilization claim, reasoning that the Hospital's failure to detect the vertebral dissection negated any possibility that it actually knew of her emergency medical condition at the time of her discharge, such knowledge being an essential element of a stabilization claim.

Having dismissed both of Elmhirst's claims, the district court entered judgment for the Hospital. This timely appeal followed.

## II. ANALYSIS

Elmhirst appeals the dismissal of both her screening and stabilization claims. Applying the de novo standard of review, we will examine her arguments as to each claim in turn. *See Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) ("We review a district court's ruling on a Rule 12(b)(6) motion *de novo*."). In doing so, we "must accept as true all of the allegations

contained in [the] complaint," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), although we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**A.      The district court properly dismissed the screening claim based on *Cleland*'s improper-motive requirement.**

Elmhirst does not contest the district court's ruling that her complaint fails to satisfy the requirement of *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266 (6th Cir. 1990), that a § 1395dd(a) plaintiff must plead facts showing that the hospital acted with an "improper motive" in failing to provide an appropriate medical screening.  She instead argues that we should "reconsider" *Cleland* because our sister circuits have uniformly rejected its motive requirement, and because the Supreme Court has purportedly disapproved of it as well.

Section 1395dd(a) requires hospitals to provide "an appropriate medical screening examination within the capability of the hospital's emergency department" to "any individual [who] comes to the emergency department" seeking treatment.  42 U.S.C. § 1395dd(a).  In *Cleland*, this court interpreted the term "appropriate" to refer to "the motives with which the hospital acts." 917 F.2d at 272.  The court reached this interpretation in an effort to distinguish a cause of action under § 1395dd(a) from state-law claims for medical malpractice.  *See id.* (reasoning that "the term 'appropriate'" must "refer to the motives with which the hospital acts" because the statute "precludes resort to a malpractice or other objective standard of care"); *accord Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 798 (10th Cir. 2001) (noting the "uneasy intersection between EMTALA and state law medical negligence claims"); *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir. 1996) (en banc) (recognizing the rationale for the improper-motive requirement as "[o]ne way of limiting the potentially sweeping scope of the statute's language").

To flesh out the concept of an improper motive, the court in *Cleland* then suggested a number of reasons that "might lead a hospital to give less than standard attention to a person who arrives at the emergency room," and which would create liability under § 1395dd(a). 917 F.2d at 272. It particularly noted that Congress had intended EMTALA to address the problem of "patient dumping," or discrimination against uninsured or indigent patients in the provision of emergency care. *Id.* at 268.

The bottom line, *Cleland* said, is that "[a] hospital that provides a substandard (by its standards) or nonexistent medical screening for any reason (including, without limitation, race, sex, politics, occupation, education, personal prejudice, drunkenness, spite, etc.) may be liable under [§ 1395dd(a)]." *Id.* at 272. Subsequent panels of this court have understood *Cleland* to impose a burden on plaintiffs to show that the hospital, in failing to provide an appropriate medical screening, acted with an "improper motive." *See, e.g.*, *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 621 (6th Cir. 2013) (noting *Cleland*'s "improper motive requirement"); *Estate of Taylor v. Paul B. Hall Reg'l Med. Ctr.*, 182 F.3d 918, 1999 WL 519295, at *2 (6th Cir. 1999) (per curiam) (unpublished table decision) (concluding, based on *Cleland*, that the plaintiff's claim under § 1395dd(a) "fails on pleading grounds, as there is no allegation in the complaint that either defendant acted with an improper motive").

In the present appeal, Elmhirst argues that we should reconsider *Cleland*, but she does not dispute that her complaint offers insufficient factual support for the allegation that the Hospital acted with an "improper motive." She has thus waived any argument that her unsupported allegations regarding the Hospital's motive satisfy the pleading standard set forth in *Twombly*, 550 U.S. at 554–70, and *Iqbal*, 556 U.S. at 677–87.

This leaves us to focus solely on the continuing validity of *Cleland* itself. We note that *Cleland* was the first attempt by any circuit court to interpret § 1395dd(a)'s phrase "appropriate medical screening" and to distinguish that subsection's cause of action from state-law claims for medical malpractice. Since then, several other circuits have weighed in. Each has rejected *Cleland*'s improper-motive requirement. *See Phillips*, 244 F.3d at 798 ("This circuit . . . does not require any particular motive for EMTALA liability to attach."); *Summers*, 91 F.3d at 1138 ("[W]e cannot agree [with *Cleland*] that . . . evidence of improper motivation is essential."); *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1193, 1194 n.9 (1st Cir. 1995) (holding that liability under § 1395dd(a) can attach "regardless of motive"); *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856–59 (4th Cir. 1994) ("We are persuaded that the D.C. Circuit's rejection of an improper motive requirement is indeed the correct approach."); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041–42 (D.C. Cir. 1991) (holding that "any departure from standard screening procedures constitutes inappropriate screening" and that "[t]he motive for such departure is not important").

These courts have criticized the improper-motive requirement as lacking support in the statutory text, lacking conceptual coherence, and making a claim unreasonably difficult to prove. *See, e.g.*, *Summers*, 91 F.3d at 1137–38 (locating no motive requirement in the statutory text); *Correa*, 69 F.3d at 1194 n.9 (agreeing with *Power*, 42 F.3d at 857, that "the range of improper motives available under the *Cleland* standard 'is so broad as to be no limit at all, and as a practical matter amounts to not having a motive requirement'"); *Power*, 42 F.3d at 857 (observing that "there is nothing in the statute itself that requires proof of . . . any . . . improper motive"); *id.* at 858 (opining that "having to prove the existence of an improper motive . . . would make a civil EMTALA claim virtually impossible"). Whatever the merits of these

critiques, the choice of our sister circuits—starting with the District of Columbia Circuit, and then the Tenth, Fourth, First, and Eighth Circuits—to chart a different path has left the Sixth Circuit alone on a doctrinal spur.

The Supreme Court noted this circuit split in *Roberts v. Galen of Va., Inc.*, 525 U.S. 249 (1999) (per curiam), in which it reversed this court's decision (which was reached based on *Cleland*) that proof of an improper motive is necessary for recovery under EMTALA's provision requiring that hospitals stabilize patients before transferring or discharging them. (This stabilization requirement is set out in § 1395dd(b), whereas the screening requirement that *Cleland* addressed appears in § 1395dd(a).) Although *Roberts* reversed this court's decision to import *Cleland*'s improper-motive requirement from § 1395dd(a) to the different context of § 1395dd(b), it left *Cleland* itself undisturbed, explaining: "The question of the correctness of the *Cleland* court's reading of § 1395dd(a)'s 'appropriate medical screening' requirement is not before us, and we express no opinion on it here." *Id.* at 253. The Supreme Court saw fit to "note, however, that *Cleland*'s interpretation of [§ 1395dd(a)] is in conflict with the law of other Circuits which do not read [that provision] as imposing an improper motive requirement." *Id.* at 253 n.1.

Elmhirst contends that despite the Supreme Court's express disclaimer in *Roberts* that it did not intend to opine on the improper-motive requirement in *Cleland*, we should perceive disapproval in the Court's tone. Faced with the Court's explicit language, however, we do not read *Roberts* as abrogating *Cleland*. Moreover, this court has already considered and rejected the suggestion that *Cleland* was vitiated by *Roberts*. *See Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 621 (6th Cir. 2013) (concluding, after a review of *Roberts*, that "[t]here have been no decisions by . . . the Supreme Court which negate *Cleland*").

*Cleland* thus remains the law in this circuit, and we are obligated to apply it. *See* 6th Cir. ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (reiterating that a prior panel's decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision"). Accordingly, we are bound by *Cleland* to conclude that the district court did not err in dismissing Elmhirst's screening claim.

The apparent lopsidedness of the circuit split, however, and the force of the arguments that have persuaded our sister circuits to coalesce around the approach articulated in *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037 (D.C. Cir. 1991)—to say nothing of the fact that *Cleland* constituted the first attempt by any circuit court to interpret § 1395dd(a)—might suggest that an en banc review of this decision would be appropriate. *See* Fed. R. App. P. 35(b)(1)(B) (providing for en banc review if "the proceeding involves one or more questions of exceptional importance," such as "an issue on which the panel decision conflicts with the authoritative decisions of other United States Court of Appeals that have addressed the issue"); Fed. R. App. P. 35 advisory committee's note to 1998 amendment (describing as a "strong candidate for a rehearing en banc" the "situation . . . in which the circuit persists in a conflict created by a pre-existing decision of the same circuit and no other circuits have joined on that side of the conflict").

**B.** **The district court did not err in dismissing Elmhirst's stabilization claim because her complaint shows that the Hospital lacked actual knowledge of her emergency medical condition.**

Elmhirst next challenges the district court's dismissal of her claim that the Hospital failed to provide the treatment necessary to stabilize her emergency medical condition before

discharging her, as required by § 1395dd(b). Subsection (b) provides that if a "hospital determines that the individual [seeking treatment] has an emergency medical condition," then the hospital must (unless it transfers the patient in accordance with subsection (c)) "provide . . . for such further medical examination and such treatment as may be required to stabilize the medical condition" before discharging the patient. 42 U.S.C. § 1395dd(b).

Because § 1395dd(b) plainly states that a hospital's duty to provide the treatment necessary to stabilize a patient's emergency medical condition arises only if the hospital actually detects such a condition, this court has held that a hospital cannot be liable under § 1395dd(b) for failing to stabilize a condition that it did not detect. *See Cleland*, 917 F.2d at 271 ("If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition."); *accord Gatewood*, 933 F.2d at 1041 (concluding that, because "no [emergency medical] condition was diagnosed, . . . the statute's stabilization and transfer requirements are therefore inapplicable").

Elmhirst's complaint alleges no facts that plausibly support an inference that the Hospital actually knew that she was suffering from an emergency medical condition, yet discharged her anyway. Her core allegation, in fact, is that the Hospital wrongfully *failed to detect* her emergency medical condition. Accordingly, the district court did not err in dismissing her § 1395dd(b) stabilization claim.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.